**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) Suzanne West,<br>(2) Jeremy McMillan, and<br>(3) Ivan Herrera,<br><br>        Plaintiffs,<br><br>v.<br><br>(1) BOKF, NA;<br>(2) The Retirement Plan Committee of BOKF, NA; and<br>(3) Cavanal Hill Investment Management, Inc.,<br><br>        Defendants. | Case No. 4:20-cv-00101-JED-FHM |

**BOKF, NA and THE RETIREMENT PLAN COMMITTEE OF BOKF, NA's**
**JOINT MOTION TO DISMISS and OPENING BRIEF IN SUPPORT**

RESPECTFULLY SUBMITTED,

/s/ Frederic Dorwart
Frederic Dorwart, OBA No. 2436
Paul DeMuro, OBA No. 17605
Jared Burden, OBA No. 30026
David W. Leimbach, OBA No. 33310
FREDERIC DORWART, LAWYERS PLLC
Old City Hall Building
124 East Fourth Street
Tulsa, Oklahoma 74103
Tel: 918-583-9922
Fax: 918-584-2729
fdorwart@fdlaw.com
pdemuro@fdlaw.com
jburden@fdlaw.com
dleimbach@fdlaw.com

**Attorneys for Defendants BOKF, NA and the Retirement Plan Committee of BOKF, NA**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ii

    Cases ..................................................................................................................ii

    Statutes and Rules ...........................................................................................iv

    Miscellaneous ...................................................................................................iv

THE JOINT MOTION ................................................................................... 1

OPENING BRIEF IN SUPPORT OF JOINT MOTION TO DISMISS .............................. 1

Introduction ................................................................................................. 1

Background .................................................................................................. 2

The Legal Standard ....................................................................................... 6

Argument ..................................................................................................... 8

    I.   Plaintiffs Fail to Allege Excessive Expense and Underperformance Bottomed on Benchmarks and, Therefore, No Inference of Wrongdoing Arises ....................... 10

    II.  Even if Investment-Option-to-Investment-Option Comparisons Were Valid, Plaintiffs' Expense Comparisons Are Illogical. ..................................................... 12

    III. Even if Investment-Option-to-Investment-Option Comparisons Were Valid, Plaintiffs' Performance Comparisons Are Illogical. .............................................. 15

    IV. Plaintiffs' Allegations Respecting the Underlying Investments in the MAP Funds, the Money Market Funds, and the International Fund Are Invalid. ...................... 19

## TABLE OF AUTHORITIES

**Cases**

American Bank v. City of Menasha,
    627 F.3d 261 (7th Cir. 2010) …………………………………………….…….7

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) …………………………………………………….…………..6, 7

Bekker v. Neuberger Berman Group, LLC,
    2018 WL 4636841 (S.D.N.Y. Sept 27, 2018) ……………………………………14

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) ………………………………………………………….………6, 7

Birse v. CenturyLink, Inc.,
    2020 WL 1062902 (D. Colo. Mar. 5, 2020) ………………………………………17, 22

Cassell v. Vanderbilt University,
    285 F. Supp. 3d 1056 (M.D. Tenn. 2018) ……………………………………………12

Divane v. Northwestern University,
    — F. 3d —, 2020 WL 1444966 (7th Cir. Mar. 25, 2020) …………………………6, 20

DM Research, Inc. v. Coll. of Am. Pathologists,
    170 F.3d 53 (1st Cir.1999) ………………………………………………………….7, 21

Donovan v. Cunningham,
    716 F.2d 1455 (5th Cir. 1983) …………………………………………………….…8

Dorman v. Charles Schwab Corp.,
    2019 WL 580785 (N.D. Cal. Feb. 8, 2019) …………………………………..……19

Ferguson v. Ruane Cunniff & Goldfarb, Inc.,
    2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019) ……………………………………16, 19

Fifth Third Bancorp v. Dudenhoeffer,
    134 S. Ct. 2459 (2014) …………………………………………………………..6

Hekker v. Deere & Co.,
    556 F. 3d 575 (7th Cir. 2009) ………………………………………………………12

Johnson v. Providence Health & Servs.,
   2018 WL 1427421 (W.D. Wash. Mar. 22, 2018) ……………………………………………2

Kirschbaum v. Reliant Energy, Inc.,
   526 F.3d 243 (5th Cir. 2008) …………………………………………………………..…8

Laborers Nat'l Pension Fund v. N. Tr. Quantitative Advisors, Inc.,
   173 F.3d 313 (5th Cir. 1999) …………………………………………………………..…8

Laboy v. Bd. of Trustees of Bldg. Serv.,
   513 Fed. Appx. 78 (2d Cir. 2013) ……………………………………………………17

Larson v. Allina Health System,
   350 F. Supp. 3d 780 (D. Minn. 2018) ……………………………………………12, 13, 19

Leber v. CitiGroup 401(k) Plan Investment Committee,
   129 F. Supp. 3d 4 (S.D.N.Y. 2015) ………………………………………………………..17, 21

Lee v. Verizon Communications, Inc.,
   837 F.3d 523 (5th Cir. 2016) ……………………………………………………………8

Loomis v. Exelon Corp.,
   658 F. 3d 667 (7th Cir. 2011) ………………………………………………………14, 19

Meiners v. Wells Fargo & Co.,
   898 F.3d 820 (8th Cir. 2018) ……………………………………………6, 7, 10, 11, 20, 22

Moitoso v. FMR, LLC,
   2020 WL 1495938 (D. Mass. Mar. 27, 2020) …………………………………………19, 20

Patterson v. Capital Group,
   2018 WL 748104 (C.D. Cal. Jan. 23, 2018) …………………………………………..20, 22

Patterson v. Morgan Stanley,
   2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ………………………………2, 14, 17, 18, 21

Pension Benefit Guar. Corp. ex rel St. Vincent v. Morgan Stanley,
   712 F.3d 705, 719 (2d Cir. 2013) ………………………………………………………21

Pledger v. Reliance Trust Co.,
   240 F. Supp. 3d 1314 (N.D. Ga. 2017) ………………………………………………20

Renfro v. Unisys Corp.,
   671 F. 3d 314 (3d Cir. 2011) …………………………………………………………..…2

Rosen v. Prudential Ret. Ins. & Annuity Co.,
    2016 WL 7494320 (D. Conn. Dec. 30, 2016) ……………………………………………19

Terraza v. Safeway, Inc.,
    241 F. Supp. 3d 1057 (N.D. Cal. 2017) ……………………………………………………12

Tussey v. ABB, Inc.,
    850 F. 3d 951 (8th Cir. 2017) …………………………………………………………..16

White v. Chevron Corp.,
    2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ……………………………………12, 13

White v. Chevron Corp.,
    2017 WL 2352137 (N.D. Cal. May 31, 2017) ……………………………………20, 22

Wildman v. Am. Century Services, LLC,
    362 F. Supp. 3d 685 (W.D. Miss. 2019) …………………………………………..17, 19

In re Williams Companies ERISA Litig.,
    271 F. Supp. 2d 1328 (N.D. Okla. 2003) …………………………………………………2

**Statutes and Rules**

15 U.S.C. §§ 80a-1, et. seq. ……………………………………………….……………14

15 U.S.C. §§ 80a-8, 24, 29…………………………………………………………………14

15 U.S.C. § 80a-16…………………………………………………………………………14

29 U.S.C. § 1002(34) ………………………………………………………………………3

FRCP 8…………………………………………………………………………….6, 7

FRCP 12(b)(6) …………………………………………………….…………………1, 7

**Miscellaneous**

42 Fed. Reg. 18734 (Apr. 8, 1977……………………………………………………1

Heath, Jason, Relying on Proprietary Products Not Necessarily a
Bad Thing for Advisors, Financial Post……………………………………….…………5

Kozlowski, Rob, Morningstar: Average Expense Ratio for
Target-Date Funds Falls to 62 Basis Points, Pi Online……………………………………..13

Levy, Roger, How to Address the (Major) Risks of Proprietary Funds in
401ks, 401k Specialist…………………………………………………………….……………5

Segal, Troy, Collective Investment Fund (CIF), Investopedia ………………………………4

**THE JOINT MOTION**

Defendants BOKF, NA ("BOKF") and the Retirement Plan Committee of BOKF, NA ("Committee") move this Court to dismiss Plaintiffs' Complaint (Dkt. 2) pursuant to FRCP 12(b)(6).

**OPENING BRIEF IN SUPPORT OF JOINT MOTION TO DISMISS**

**Introduction**

Public policy recognizes that "[i]t is in the interests of plans and their participants and beneficiaries" to allow financial institutions to include proprietary funds in their plans. 42 Fed. Reg. 18734 (Apr. 8, 1977) (establishing Prohibited Transaction Exemption 77-4 to allow ERISA plan investments in proprietary funds). By ignoring well-established principles of ERISA plan investing, and how ERISA plan investments are properly selected, Plaintiffs attempt to establish an inference, with no knowledge, that the Defendants breached their fiduciary duties. Plaintiffs hide this "inference" linchpin of their claim in pages of irrelevancies and intended, but not so, erudite discussion having nothing to do with the issues at hand. They push their claim for an "inference" beyond plausibility and beyond anything the courts have heretofore recognized.[1]

The Plaintiffs' sole claim to entitlement of an inference of wrongdoing, bottomed on nothing more than a whiff of hot air, contravenes public policy by subjecting ERISA plan sponsors, plan investment committees, and their advisors to burdensome and expensive litigation on the basis of allegations which do not rise to a level justifying any

---

[1] "Pigs get fat, hogs get slaughtered" is an American idiom that "is used to express being satisfied with enough, that being greedy or too ambitious will be your ruin." See https://www.usingenglish.com/reference/idioms/country/american+english.html.

inference of a fiduciary breach.  This Court should prevent such an attack on public policy and dismiss the Plaintiffs' Complaint.

## Background[2]

BOKF, NA is the nation's thirtieth largest national bank.  Since its acquisition by George B. Kaiser in 1991, "Bank of Oklahoma" has grown from $1.9 billion to over $40 billion in assets.  Since 1991 the bank has never incurred an annual loss.  In fact, in the twenty-eight years since 1991, BOKF has experienced year-over-year profit increases in twenty-three out of the twenty-eight years and exceeded $200 million in earnings every year except the Great Recession year of 2008 in which it earned $153 million.  BOKF was the largest bank in the United States to decline federal TARP assistance during the Great Recession.

Along the way, the assets under management by BOKF's Wealth Management Division have grown from $6 billion to $67.5 billion.  Mutual funds advised by defendant Cavanal Hill Investment Management, Inc., a subsidiary of BOKF, have earned thirteen Lipper Awards[3] in the past ten years.  This striking success was not achieved by bad

---

[2] ERISA plan documents, fee schedules, and other like documents are routinely considered on motions to dismiss complaints alleging ERISA breaches of fiduciary duty. In re Williams Companies ERISA Litig., 271 F. Supp. 2d 1328, 1331 (N.D. Okla. 2003) (considering plan documents); Patterson v. Morgan Stanley, 2019 WL 4934834, *11 (S.D.N.Y. Oct. 7, 2019) (considering fee disclosures); Johnson v. Providence Health & Servs., 2018 WL 1427421, *3 (W.D. Wash. Mar. 22, 2018) (considering fee disclosures and fund prospectuses); see also Renfro v. Unisys Corp., 671 F. 3d 314, 327 (3d Cir. 2011) (considering risk profiles, investment strategies, and associated fees).

[3] Awarded to individual mutual funds that have outperformed peers based on risk-adjusted, consistent returns.

policies, unreasonable fees, or poor performance. Along with its exceptional earnings growth and increase in assets under management, BOKF's employees have increased from 900 to 5,000. It is this workforce which has made BOKF's success – and for whom BOKF, through its employee representatives, manage the BOK Financial 401(k) Plan ("Plan").[4]

After one month of employment, all BOKF employees ("Participants") are entitled to open an individual account in the Plan. [Base Plan Document, § 9.03, attached as Exhibit A; Plan Adoption Agreement, § B(10), attached as Exhibit B.] Employees may contribute up to 100% of their income into their accounts (subject to federal limits). [Ex. B, § C(3).] After an employee has been employed for 6 months, BOKF starts matching 100% of the employee's contributions up to 6% of the employee's salary with the match increasing to 200% over time. [Id. at § B(15) and p. 40.]

The employees have the right to direct their own investments. [Ex. A, § 9.02; Ex. B, § G(2); see also Fee Disclosures, attached as composite Exhibit C (explaining that the Plan complies with ERISA § 404(c)).] Depending on the year, employees may pick from among seventeen to eighteen different pre-selected investments. [See Ex. C.] In addition, employees can elect a Self-Directed Option and independently choose from a broad range of publicly traded securities, including mutual funds. [Id.]

BOKF is the Plan sponsor. The Committee is the Plan Administrator. [Ex. B, p. 41.] The Committee consists entirely of employee representatives. [Ex. B, p. 42.] The Committee chooses, monitors, and replaces investment options from time to time. [Ex.

---

[4] The Plan is a defined benefit plan and an individual account plan pursuant to 29 U.S.C. § 1002(34). [Complaint, ¶ 18.]

A, § 12.01(b); Ex. B, p. 41.]  At any given time, all but three of the total seventeen to eighteen investment options are managed by third-parties.  [See Ex. C.]  One of the three investment options are target date funds managed by BOKF: the Managed Allocation Portfolio Target Fund, which makes available a series of seven target-date retirement options ("MAP Funds").  [Id.]  The second BOKF managed option is the International Strategic Allocation Fund ("International Fund").  [Id.]

Cavanal Hill Investment Management, Inc. ("CHIM"), a subsidiary of BOKF, NA, is the adviser to the Cavanal Hill Funds, an open-end registered investment company which offers eleven series of mutual funds.  One of those funds is the third investment option in the Plan not managed by a third-party: the Cavanal Hill Government Securities Money Market Fund ("Money Market Fund").  [Id.]

The BOKF MAP Funds and the International Fund are collective investment trusts ("CITs").[5]  Each CIT invests in a diversified portfolio of mutual funds (the "Underlying Investments"), with different percentages of each mutual fund allocated within the Funds.  [See, e.g., Ex. C, p. 37.]  The percentage in each different series depends on the stated

---

[5] A collective investment trust is a group of pooled accounts held by a bank or trust company under the supervision of the Office of the Comptroller of the Currency.  The financial institution groups assets to develop a single larger, diversified portfolio.  See Troy Segal, Collective Investment Fund (CIF), available at https://www.investopedia.com/terms/c/collective-investment-fund.asp.

goal of that particular series.[6]  Importantly, the vast majority (over 90%) of the Underlying Investments in the MAP Funds and the International Fund are managed by third parties.[7] [See, e.g., Ex. D (showing no proprietary investments within the top 80% of holdings.]

All BOKF Plan investments, including both the BOKF proprietary funds and the third-party managed funds, are selected and monitored by employee representatives on the Committee pursuant to an exhaustive review process that exceeds ERISA's requirements.  As shown by the Fee Disclosures, each fund's performance is tracked against an accepted industry benchmark and peer group.  [Ex. C.]  The proprietary funds typically meet or exceed these benchmarks and/or peer group averages, with most comfortably outperforming either or both measures.  [Id.]  In addition to monitoring performance, the employee representatives of the BOKF Plan monitor the fees charged by the BOKF proprietary funds to ensure they are in line with comparable funds in the industry.  [See, e.g., id.]

---

[6] For example, the MAP Target 2040 Fund is designed for Participants who plan on retiring in the year 2040.  Since their time horizon is mid-range, the 2040 Fund is weighted in Underlying Investments in equities and conservative investments.  [MAP Target 2040 Fund Fact Sheet, attached as Exhibit D.]  The MAP Target 2020 Fund is designed for Participants retiring in 2020, so it holds a more conservative mix of Underlying Investments, with higher concentrations of fixed income and cash equivalents.  [MAP Target 2020 Fund Fact Sheet, attached as Exhibit E.]

[7] Since 2014, the highest percentage ever held by all seven MAP Funds and the International Fund in all funds advised by Cavanal Hill Management Investment, Inc. was 9.5%, with the average being less than 7%.

Against this background, and in light of the public policy expressly recognizing the value of proprietary funds,[8] it is patent that Plaintiffs have stretched their claim for an "inference" of wrongdoing beyond plausibility.  This Court should prevent the burden of Plaintiffs' counsel's desire to fish and dismiss Plaintiffs' whiff of hot air.

Before discussing the law supporting this dismissal, we discuss the legal standard for motions to dismiss particularly applicable to the allegations of the Plaintiffs' Complaint.

### The Legal Standard

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible only when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added).

Plaintiffs' allegations must demonstrate "more than a sheer possibility that a defendant has acted unlawfully."  Id. at 679 (emphasis added).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."  Id. (quoting FED.R.CIV.P. 8(a)(2) (emphasis added)).  If the plaintiff alleges facts equally

---

[8] It is entirely normal business practice for a financial institution to offer its own products, which it necessarily believes are of the highest quality.  And there is value to having proprietary options, including easier access to the fund managers and more familiarity with the fund's investment strategies, among other reasons.  See, e.g., Roger Levy, How to Address the (Major) Risks of Proprietary Funds in 401ks, 401k Specialist, available at https://401kspecialistmag.com/how-to-address-the-major-risks-of-proprietary-funds-in-401ks/; Jason Heath, Relying on Proprietary Products Not Necessarily a Bad Thing for Advisors, Financial Post, available at https://business.financialpost.com/personal-finance/retirement/relying-on-proprietary-products-not-necessarily-a-bad-thing-for-advisers.

consistent with both lawful and unlawful conduct, the plaintiff has not crossed the line from the merely possible to the plausible. Meiners v. Wells Fargo & Co., 898 F.3d 820, 824 (8th Cir. 2018); see also Divane v. Northwestern University, — F.3d —, 2020 WL 1444966 (7th Cir. Mar. 25, 2020) (affirming dismissal of ERISA claims where there were "valid" and "prudent" explanations for the alleged unlawful conduct, defeating any plausible inference of a fiduciary breach).

A motion to dismiss is an "important mechanism for weeding out meritless" ERISA claims. Fifth Third Bancorp v. Dudenhoeffer, 134 S. Ct. 2459, 2471 (2014). As the Court of Appeals for the Seventh Circuit has observed, Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, as interpreted in Twombly and Iqbal, help "to prevent settlement extortion—using discovery to impose asymmetric costs on defendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit." Am. Bank v. City of Menasha, 627 F.3d 261, 266 (7th Cir. 2010).

"The price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome." DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 55 (1st Cir.1999).

To show that a prudent fiduciary would have selected a different fund based on the expense or performance of a selected comparator fund, a plaintiff "must provide a sound basis for comparison—a meaningful benchmark." Meiners, 898 F. 3d at 822 (emphasis added).

On the basis of the foregoing well-established legal standards, this Court must dismiss the Plaintiffs' Complaint.

**Argument**

Plaintiffs allege that it "appears to" them Defendants acted solely to collect fees (Complaint, ¶ 8) and again that it "appears to" them Defendants acted solely as "patrons to the company." [Complaint, ¶10.] Based solely on what "appears to them," Plaintiffs beg for an "inference" that the employee representatives who constitute the BOKF Plan Committee and selected and monitored the Plan investments acted wrongly.

Plaintiffs' counsel claims to have found, through some undisclosed process, out of the universe of all the investment options in the world over some equally magical period of time, a handful of cherry-picked individual investment options that were less expensive or performed better than some of the investment options approved for the Plan by the employees' representatives. That claim, even were it true, is neither the industry standard for measuring investment performance, nor the legal standard. Without more, no reasonable person could draw an "inference" of wrongdoing.

Plaintiffs allege high expenses and low performance solely by comparing their selected investment option comparators, arbitrarily selected out of the universe of thousands of investment options, to some of the investment options selected by the employee representatives for the Plan. Plaintiffs do not allege (i) the process by which they, the Plaintiffs, selected their comparators, nor do they even allege (ii) any probative

facts that would suggest their investment option to investment option comparisons are valid—that is, Plaintiffs allege no apples-to-apples comparisons.[9]

The Plaintiffs concede they have no knowledge of, and fail to allege, any actual wrongdoing in the process by which the employee representatives on the Plan Committee selected the BOKF Plan investment options.[10]  Plaintiffs sue solely on the basis of their claim to an "inference" of wrongdoing – that is, merely because there is a possibility of wrongdoing.

The failure of the Plaintiffs to allege any actual wrongdoing in the process by which the employee representatives select and monitor the Plan investment options is not the only fatal flaw in Plaintiffs' Complaint.  Plaintiffs' Complaint is subject to the following additional flaws and their Complaint must be dismissed for the following reasons:

> (i)    Plaintiffs fail to allege excessive expense and underperformance bottomed on benchmarks and, therefore, no inference of wrongdoing arises.

> (ii)   Even if investment-option-to-investment-option comparisons were valid, Plaintiffs' expense comparisons are illogical and, therefore, no inference of wrongdoing arises.

---

[9] The American metaphor for dissimilarity began as apples and oysters, which appeared in John Ray's proverb collection of 1670. It is nearly always accompanied by a warning that one cannot compare such different categories.  American Heritage Dictionary of Idioms (1997).  As discussed below, Plaintiffs comparisons are not valid, apples-to-apples comparisons.

[10] ERISA's "test of fiduciary prudence 'is one of conduct, not results.'" Lee v. Verizon Communications, Inc., 837 F.3d 523, 541-42 (5th Cir. 2016) (quoting Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 253 (5th Cir. 2008)).  "The focus of the inquiry is how the fiduciary acted in his selection of the investment, and not whether his investments succeeded or failed."  Laborers Nat'l Pension Fund v. N. Tr. Quantitative Advisors, Inc., 173 F.3d 313, 317 (5th Cir. 1999) (quoting Donovan v. Cunningham, 716 F.2d 1455, 1467 (5th Cir. 1983)).

  (iii) Even if investment-option-to-investment-option comparisons were valid, Plaintiffs' performance comparisons are illogical and, therefore, no inference of wrongdoing arises.

  (iv) Plaintiffs' allegations respecting the Underlying Investments in the MAP Funds, the Money Mark Funds, and the International Fund are invalid.

Each of these flaws is hereafter discussed.

**I. Plaintiffs Fail to Allege Excessive Expense and Underperformance Bottomed on Benchmarks and, Therefore, No Inference of Wrongdoing Arises.**

Plaintiffs bottom their claim to an inference of wrongdoing by alleging that a handful of investments cherry-picked by their counsel through some process they choose not to disclose were less expensive or performed better than some of the investment options approved for the BOKF Plan by the employees' representatives. That claim, even were it true, is neither the industry standard for measuring investment performance, nor the legal standard as the United States Court of Appeals for the Eighth Circuit has expressly held.

"To show that a prudent fiduciary in like circumstances would have selected a different fund based on the cost or performance of the selected fund, a plaintiff must provide a sound basis for comparison — a meaningful <u>benchmark</u>." <u>Meiners</u>, 898 F.3d at 822 (holding that plaintiffs could not "dodge the requirement for a meaningful benchmark by merely finding a less expensive alternative fund with some similarity") (emphasis added).

In <u>Meiners</u>, the Eighth Circuit rejected the plaintiffs' comparison of Wells Fargo target-date funds to similar Vanguard target-date funds with "a different investment

strategy" because the two sets of funds had different asset allocations to bonds. Just because two funds may share the same <u>objective</u> does not mean they share the same <u>strategy</u>. <u>See, e.g.</u>, <u>id.</u>, 898 F.3d at 823.

Indeed, in <u>Meiners</u> the Eighth Circuit affirmed the dismissal of a proprietary-fund claim challenging target date funds where the plaintiffs – like Plaintiffs here – identified two allegedly better performing target date funds.  Because those alleged comparator funds had slightly different allocations to bonds, the Eighth Circuit held that the comparison did not create an inference the Wells Fargo fiduciaries acted imprudently and affirmed dismissal of the complaint.  <u>Id.</u>

Plaintiffs concede they know nothing about the process by which the investments were made for the BOKF Plan; indeed, that ignorance is the basis on which they beg for an inference.  Instead of comparing the Plan investments to meaningful benchmarks as required by <u>Meiners</u>, they rely on comparisons that, with respect to both fees and performance[11], are apples-to-oranges — not even close.

Given that public policy recognizes that "[i]t is in the interests of plans and their participants and beneficiaries" to allow financial institutions to include proprietary funds in their plans, the legal standards applicable to all litigation (more than a sheer possibility; inference must be reasonable; allegation of conduct equally lawful means only possible, not plausible; price of discovery is factual predicate to an action), it is no surprise the Eighth Circuit had no difficult holding that the plaintiffs had, at a minimum, to follow

---

[11]  Expenses are discussed in Argument II at page 12 below.  Performance is discussed in Argument III at page 15 below.

accepted industry standards and allege benchmark comparisons.  Since Plaintiffs here do not allege benchmark comparisons, their claims fail.

We turn now to the cherry-picked, illogical comparisons.

## II.    Even if Investment-Option-to-Investment-Option Comparisons Were Valid, Plaintiffs' Expense Comparisons Are Illogical.

Plaintiffs' allegations that the BOKF MAP Funds' fees were excessive when compared with fees for other, dissimilar investment options (arbitrarily selected by them in an effort to maintain an action without disclosure of the process by which the selection was made) justifies no inference of wrongdoing.[12]  Courts have long recognized that it is "inappropriate to compare distinct investment vehicles solely by cost, since their essential features differ so significantly."  Larson v. Allina Health System, 350 F. Supp. 3d 780, 795 (D. Minn. 2018).

Even if Plaintiffs had been able to allege a valid investment-option-to-investment-option comparison showing a meaningful difference in expenses, that comparison does not give rise to an inference of wrongdoing.  The law clearly requires more.

"Fiduciaries have latitude to value investment features other than price (and, indeed, are required to do so), as recognized by the courts." Cassell v. Vanderbilt University, 285 F. Supp. 3d 1056, 1067 (M.D. Tenn. 2018); see also White v. Chevron Corp., 2016 WL 4502808, *10 (N.D. Cal. Aug. 29, 2016) (collecting cases).  More to the

---

[12] Nor does an inference arise from Plaintiffs' allegation that the Plan is the largest investor in the BOKF MAP Funds.  Many smaller ERISA plans invest in the BOKF MAP Funds whose fiduciaries adhere to the same fiduciary duties as fiduciaries of larger ERISA plans. Other more plausible inferences can just as easily be drawn: the Funds are not available on third-party record-keeping platforms; BOKF is substantially smaller in the national retirement plan investment space; BOKF is substantially larger in the regional market space.

point, "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." Hekker v. Deere & Co., 556 F. 3d 575, 587 (7th Cir. 2009).

For this reason, apples-to-oranges comparisons between different funds cannot be the basis for a claim — particularly where the oranges have been hand-picked by plaintiff class action law firms without any pretense that they are apples – not oranges. Id.; see also Terraza v. Safeway, Inc., 241 F. Supp. 3d 1057, 1075 (N.D. Cal. 2017) (dismissing claim premised on the offering of common trusts and SMAs at the expense of mutual funds).

The expense comparisons made by Plaintiffs are facially illogical.

The BOKF MAP Funds are collective investment trusts which invest in a wide range of diversified, third-party managed mutual funds and four Cavanal Hill managed mutual funds, which provides the distinct advantages of both mutual fund diversification and expanded investment options.  [See Exs. D and E.]  The Plaintiffs, foundering in apples and oranges, compare the average expenses of stand-alone target-date mutual funds with the expenses of the MAP Funds, a collective investment trust where the selection and continuous supervision of multiple mutual fund managers provides the distinct advantage of diversification and investment options.  The point here is not that one investment strategy is better than another (though BOKF strongly believes its business success validates its strategy), but that it is illogical to compare the expenses of one strategy to the expenses of another strategy.

Plaintiffs offer no justification for comparing fees charged by a diversified investment option whose holdings include numerous mutual funds managed by third-

parties with fees allegedly charged by stand-alone mutual funds. A comparison of fees between such dissimilar investments cannot be the basis of a claim.[13] Larson, 350 F. Supp. 3d at 795; White, 2016 WL 4502909 at *12

Plaintiffs next compare the BOKF MAP Funds to two target date CITs Plaintiffs' counsel cherry-picked from the universe: the FIAM Blend Target Date Funds ("FIAM Funds") and the TRP Retirement Hybrid Funds ("TRP Funds"). Plaintiffs state in conclusory fashion that these Funds share a similar structure with the MAP Funds. In fact, the FIAM and TRP Funds are wholly distinguishable from the MAP Funds due to their underlying investments, which are in their own managed CITs.[14] The BOKF MAP Funds, on the other hand, are overwhelmingly invested in third-party managed mutual

---

[13] Although beyond the scope of this Motion to Dismiss, the cost of the BOKF MAP Funds is not currently 0.88% (a fact that can be deduced from the figures cited in Plaintiffs' Complaint). No BOKF MAP Fund net expense ratio exceeds 0.74%. The average net expense of all target-date funds reported by MorningStar is roughly 0.62%. Rob Kozlowski, Morningstar: Average Expense Ratio for Target-Date Funds Falls to 62 Basis Points, at https://www.pionline.com/article/20190509/ONLINE/190509854/morningstar-average-expense-ratio-for-target-date-funds-falls-to-62-basis-points-in-2018. Thus, the BOKF MAP Funds' fees are in line with industry norms.

[14] Although also beyond the scope of this Motion to Dismiss, see T. Rowe Price Ret. Hybrid 2040 Fact Sheet, attached as Exhibit F, available at https://www3.troweprice.com/rws/rps/public/assets/ffs/T4I.pdf ("The Trust invests in underlying commingled T. Rowe Price Trusts . . . ."); see also FIAM Blend Target Date Fact Sheet, attached as Exhibit G, available at https://institutional.fidelity.com/app/literature/item/963555.html ("The pool employs a pool-of-affiliated pools approach by investing in . . . products managed by FIAM.").

funds.[15]  Thus, any fee comparison between the BOKF MAP Funds and FIAM and TRP Funds represents a dispute over investment philosophy, not investment prudence.  See Patterson v. Stanley, 2019 WL 4934834 *12 ("[T]he conclusory assertion that the Vanguard Mid-Cap Fund is a lower-cost comparator is not enough to state a claim of imprudence."); Bekker v. Neuberger Berman Group, LLC, 2018 WL 4636841, *7 (S.D.N.Y. Sept 27, 2018) (dismissing claim for failure to "proffer any other facts to make the comparison of the funds' fees meaningful and plausibly suggestive of a fiduciary breach.").  Nothing here justifies an inference of wrongdoing.  Again, the Plaintiffs' apples-to-oranges comparison justifies no inference of wrongdoing.

The bottom line on fees:  Plaintiffs' allegations demonstrate on their face that Plaintiffs' picked bad comparators, probative of nothing, and an investment to investment comparison of fees does not without more – and here there is no more — create an inference of wrongdoing.

### III.   Even if Investment-Option-to-Investment-Option Comparisons Were Valid, Plaintiffs' Performance Comparisons Are Illogical.

Plaintiffs also compare the BOKF MAP Funds to their cherry-picked investments in a futile effort to allege that the MAP Funds underperformed, giving rise to their claim to

---

[15] Prudent investors often select third-party managed mutual funds rather than third-party managed CITs.  Unlike CITs, mutual funds are subject to extensive SEC regulation under the Investment Company Act (15 U.S.C. §§ 80a-1, et. seq), governed by boards which include independent directors (15 U.S.C. § 80a-16), registered with the SEC, and provide detailed shareholder communications such as prospectuses and annual reports (15 U.S.C. §§ 80a-8, 24, 29).  A prudent fiduciary considers these, as well as other pertinent factors rather than simply choosing the cheapest fund.  See, e.g., Loomis v. Exelon Corp., 658 F. 3d 667, 671–72 (7th Cir. 2011) (noting that more expensive retail funds may have advantages over institutional funds, such as higher liquidity).

an inference of wrongdoing.  In fact, an analysis of Plaintiffs' allegations shows that the BOKF MAP Funds performed well.

As demonstrated by the yearly Plan Fee Disclosures (Ex. C), the BOKF MAP Funds are compared to at least one and sometimes two appropriate benchmarks: at various times, the Disclosures compare the Funds to the Morningstar US Market Index, the Morningstar Lifetime Conservative Indexes, the S&P Target Date Indexes and the MSCI All Country World Index.[16]  Each BOKF MAP Fund identified by Plaintiffs in their Complaint performs in line with their respective one-year, five-year, and ten-year benchmarks.  [See Ex. C.]  So much for Plaintiffs' allegations of poor performance.

More to the point, Plaintiffs' exclusive focus on a five-year return is misplaced — and says a lot about the Plaintiffs' entitlement to an inference of wrongdoing, despite the concession they had no knowledge of any wrongdoing.  The BOKF MAP Funds are long-term investments which are meant to increase in value over the course of a Participant's entire career and into retirement.  Accordingly, it is appropriate to use a longer measurement of annualized return, such as the ten-year return, to determine the performance of these investments.  When one looks at these numbers, we find that the MAP Funds beat their respective category averages with few exceptions.  [Ex. C.]  Certainly, these returns do not justify any inference of wrongdoing.

Regardless of the time horizon, when you consider the BOKF MAP Funds in the context of their respective benchmarks, such "periods of both outperformance and underperformance [are] common amongst portfolio investments" and do not imply a

_____

[16] Plaintiffs imply that BOKF never provided benchmark comparisons to Participants.  As evidenced by the Fee Disclosures, the implication is obviously false.

breach of fiduciary duty.  Ferguson v. Ruane Cunniff & Goldfarb, Inc., 2019 WL 4466714, *9 (S.D. N.Y. Sept. 18, 2019).

By contrast, the FIAM and TRP Funds are not benchmarks, nor have Plaintiffs alleged any facts that would indicate that FIAM and TRP are sufficiently similar to the BOKF MAP Funds to make a comparison between the FIAM and TRP Funds and the BOKF MAP Funds relevant, nor can Plaintiffs so allege.  Plaintiffs allegations fail to justify any inference of wrongdoing; certainly not when (i) public policy expressly permits the use of proprietary funds, (ii) the BOKF MAP Funds perform well compared with accepted benchmarks and peer groups, and (iii) the Plaintiffs fail to allege any facts establishing that the FIAM and TRP Funds are valid comparators.[17]

Even if one were to use the FIAM and TRP Funds as benchmarks (which they clearly are not), only evidence of substantial underperformance could raise any inference of wrongdoing.  Patterson v. Stanley, 2019 WL 4934834 at *10.  In essence, the underperformance must be such that "a prudent fiduciary would have found those Funds to be 'so plainly risky' as to render the investments in them imprudent."  Leber v. CitiGroup 401(k) Plan Investment Committee, 129 F. Supp. 3d 4, 14-15 (S.D.N.Y. 2015).  Small differentials (especially between funds so differently structured) do not raise an inference

_____

[17] In fact, we know the FIAM and TRP Funds are not valid comparators. They are more heavily weighted in equities, increasing risk in search of higher returns. [Compare Ex. D (MAP Target 2040 composed of 80.7% equities and growth alternatives) with Ex. F (TRP Hybrid 2040 composed of 86.1% equities).]  Such higher returns are magnified during bull markets, as occurred from 2009 through February 2020.  The TRP Fund does not even invest in a money market fund to provide for stable capital preservation as a hedge against economic downturn.  "[S]ome investments are simply meant to pay off less than others, in return for lower risks, different exposures, or countless other considerations." Tussey v. ABB, Inc., 850 F. 3d 951, n. 8 (8th Cir.).

of wrongdoing.  Patterson v. Stanley, 2019 WL 4934834 at *10 (dismissing allegations where fund underperformed industry benchmark by less than 1%); Laboy v. Bd. of Trustees of Bldg. Serv., 513 Fed. Appx. 78, 79-80 (2d Cir. 2013) (affirming the dismissal of performance allegations where the plaintiffs alleged that the fund had underperformed comparable funds by 6-22% during the class period because "allegations of poor results alone do not constitute allegations sufficient to state a claim for" a fiduciary breach).

Finally, periods of underperformance do not make an investment imprudent. "Indeed, a fiduciary may—and often does—retain investments through a period of underperformance as part of a long-range investment strategy." Wildman v. Am. Century Services, LLC, 362 F. Supp. 3d 685, 707 (W.D. Miss. 2019). "Notably, 'the duty of prudence does not compel ERISA fiduciaries to reflexively jettison investment options in favor of the prior year's top performers,' because '[i]f that were the case, Plan sponsors would be duty-bound to merely follow the industry rankings for the past year's results, even though past performance is no guarantee of future success.'" Birse v. CenturyLink, Inc., 2020 WL 1062902, *5 (D. Colo. Mar. 5, 2020) (quoting Patterson v. Stanley, 2019 WL 4934834 at *11).

Plaintiffs even admit that, during certain years, certain MAP Funds outperformed the FIAM Funds five-year average.  Had they been more forthcoming, Plaintiffs would also have admitted that the BOKF MAP Funds generally perform in line with both the FIAM and TRP Funds on the more relevant ten-year basis.  A glance at the Fee Disclosures further reveals that the MAP Funds are in line with their benchmarks and peer groups, sometimes underperforming, but often outperforming.  "[M]ixed performance is insufficient to state a claim . . . ." Patterson v. Stanley, 2019 WL 4934834, at 13.

The Plaintiffs claim to entitlement of an inference of wrongdoing, bottomed on nothing more than a whiff of hot air, contravenes public policy by subjecting ERISA plan sponsors, plan investment committees, and their advisors to burdensome and expensive litigation on the basis of allegations which do not rise to a level justifying any inference of a fiduciary breach. This Court should prevent such an attack on public policy and dismiss the Plaintiffs' Complaint.

### IV.    Plaintiffs' Allegations Respecting the Underlying Investments in the MAP Funds, the Money Market Funds, and the International Fund Are Invalid.

While the gravamen of Plaintiffs' Complaint is their challenge to the reasonableness of fees and performance of the MAP Funds, as to which they have no knowledge and as to which they have failed to make allegations sufficient to justify an inference of wrongdoing, the Plaintiffs also make multiple conclusory allegations respecting the Underlying Investments in the BOKF MAP Funds, the use of the CHIM Advised Money Market Fund, and the use of the BOKF International Fund. We briefly address the insufficiency of such conclusory allegations with respect to each.

Underlying Investments in the BOKF MAP Funds. As shown above, Plaintiffs have failed to state a claim that the MAP Funds were imprudent based on their fees and performance; they cannot remedy such failure by parsing out the Funds' Underlying Investments in the hope that one of them can somehow make the decision of the employee representatives to invest in the Fund imprudent. An ERISA claim does not lie for mismanagement in an underlying investment within an ERISA plan investment option. Moreover, courts have consistently dismissed claims where the gravamen of the

argument was that a Plan was too heavily concentrated in mutual funds, as Plaintiffs have argued here.[18]

Plaintiffs' conclusory allegation that the Underlying Investment in the Cavanal Hill Bond Fund is also improper because of a short period of underperformance is also wide of the mark.  Short periods of underperformance are to be expected and are not sufficient to warrant a claim for breach of fiduciary duty and therefore do not justify an inference of wrongdoing.  Wildman, 362 F. Supp. 3d at 707; Dorman v. Charles Schwab Corp., 2019 WL 580785, *6 (N.D. Cal. Feb. 8, 2019) ("observing that "three to five years . . . [is] considered [a] relatively short period[ ] of underperformance" that does not imply imprudence).

Further, Plaintiffs' allegation that the BOKF Plan could have invested in cheaper share classes without more fails to justify an inference of wrongdoing.  There are multiple reasons prudence often suggests a higher price share class.  See Loomis, 658 F. 3d at 671-72 (noting that more expensive retail funds may have advantages over institutional funds, such as higher liquidity).  Retention of a higher price share class does not push Plaintiffs' claims over the line from possible to probable.  See Divane, 2020 WL 1444966.  Even if this were not so, the fee differentials noted are minimal and, standing alone, do

---

[18] Rosen v. Prudential Ret. Ins. & Annuity Co., 2016 WL 7494320, *15 (D. Conn. Dec. 30, 2016) (concentration of mutual funds, without more, does not support a fiduciary breach under ERISA."); Ferguson, 2019 WL 4466714 at *10 ("ERISA does not require fiduciaries to include a particular mix of investment vehicles in a plan."); Larson, 350 F. Supp. 3d. at 796 (failure to state a claim by alleging defendants breached their fiduciary duty solely by failing to offer either a collective trust or a separate account instead of, or in addition to, mutual funds); Moitoso v. FMR, LLC, 2020 WL 1495938, *12-14 (D. Mass. Mar. 27, 2020) (aggregating cases for the proposition that there is "no inherent duty to investigate" collective trusts, separate accounts, or stable value funds).

not imply a breach of fiduciary duty.  <u>Patterson v. Capital Group</u>, 2018 WL 748104 at *4-5 (allegation that fiduciary could have invested in cheaper share class is insufficient to create a plausible inference of wrongdoing).

Finally, "<u>[w]hen both lawful and unlawful conduct would have resulted in the same decision</u>, a plaintiff does not survive a motion to dismiss by baldly asserting that unlawful conduct occurred. <u>Meiners</u>, 898 F. 3d at 824 (<u>citing Pension Benefit Guar. Corp. ex rel St. Vincent v. Morgan Stanley</u>, 712 F.3d 705, 719 (2d Cir. 2013) ("[T]he price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome." (<u>quoting DM Research</u>, 170 F.3d at 55).

<u>With respect to the CHIM Advised Money Market Fund</u>.  Incredibly, Plaintiffs allege the BOKF Plan should not have continued to use the Money Market Fund because stable value funds offer the possibility of higher returns.  Clearly, maintaining cash in a money market fund is a question of investment judgment and raises no inference of wrongdoing.  In fact, courts routinely dismiss claims where plaintiffs argue that a stable value fund should be offered instead of or in addition to a money market fund.[19]

Plaintiffs also fail to allege (i) any true benchmarks or (ii) that the funds on which they rely are comparable to the CHIM Advised Money Market Fund in either size or strategy. In addition, the CHIM Advised Money Market Fund tracks its industry based

---

[19] <u>White v. Chevron Corp.</u>, 2017 WL 2352137, *11 (N.D. Cal. May 31, 2017) (no rule a 401(k) Plan must include a stable value fund); <u>Pledger v. Reliance Trust Co.</u>, 240 F. Supp. 3d 1314, 1334 (N.D. Ga. 2017) (dismissing claim that relied on "the mere selection of one fund over another, with no allegations [other than hindsight financial comparison] of why the selection was improper."); <u>Moitoso</u>, 2020 WL 1495938 at *12-14 (aggregating cases for the proposition that there is "no inherent duty to investigate" collective trusts, separate accounts, or stable value funds).

benchmark (see Ex. B) and the disparities alleged by Plaintiffs are too small to raise any inference of wrongdoing on which Plaintiffs bottom their claims.  Meiners, 898 F.3d at 823-24 ("[W]e believe the existence of a cheaper fund does not mean that a particular fund is too expensive in the market generally or that it is otherwise an imprudent choice."); Leber, 129 F. Supp. 3d at 14-15 (underperformance must be so substantial as to show the investment was too "risky"); Patterson v. Stanley, 2019 WL 4934834, *14 (dismissing claim where fees charged were only marginally higher than other products).  More to the point, the Money Market Fund did exactly as advertised: it preserved Participants' capital. [See Ex. B.]

With respect to the International Fund.  Plaintiffs' claim that it was imprudent for the BOKF Plan to retain the International Allocation Fund as an investment option fails to raise any inference of wrongdoing for the very same reasons all of Plaintiffs' allegations with respect to the BOKF MAP Funds fail and need not be repeated here.

### Conclusion

By conceding Plaintiffs have no knowledge of any wrongdoing, by ignoring well-established principles of ERISA Plan investing, and by failing to allege high expenses or low performance by reference to accepted industry benchmarks, Plaintiffs fail to state a claim upon which relief may be granted.  Further, Plaintiffs' attempts to manufacture an inference of wrongdoing are, on their face, illogical.

Plaintiffs' sole claim of entitlement to such an inference, bottomed on a nothing more than a whiff of hot air, contravenes public policy by subjecting ERISA plan sponsors, plan investment committees, and their advisors to burdensome and expensive litigation

on the basis of allegations which do not rise to a level justifying any inference of wrongdoing.

This is the proper procedural point at which this Court, based on the lack of plausible allegations in Plaintiffs' Complaint, should terminate this litigation. [20]

---

[20] Plaintiffs' failure to monitor claim (Count II) is derivative of their breach of fiduciary duty claim, and therefore fails.  Birse, 129 F. Supp. 3d at * 16 (dismissing failure to monitor claim because it simply reiterates breach of fiduciary duty claims); Patterson v. Capital Group, 2018 WL 748104 at *6; White, 2017 WL 2352137 at *22.

**CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2020, I electronically transmitted this Motion to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Mark Hammons
Kai H. Richter
Paul J. Lukas
Brock J. Specht
Benjamin J. Bauer
Christopher Theophillus Smith

s/Frederic Dorwart
Frederic Dorwart