**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

(1) Suzanne West,
(2) Jeremy McMillan, and
(3) Ivan Herrera,

       Plaintiffs,

  v.                              Case No. 4:20-cv-00101-JED-FHM

(1) BOKF, NA; and
(2) The Retirement Plan Committee of
    BOKF, NA,

       Defendants.

**DEFENDANTS' PARTIAL MOTION TO DISMISS FOR LACK OF STANDING**
**AND OPENING BRIEF IN SUPPORT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................ii

INTRODUCTION.............................................................................................. 1

BACKGROUND .............................................................................................. 3

    I.   The Plan ........................................................................................... 3

    II.  The Named Plaintiffs........................................................................ 5

LEGAL STANDARD ....................................................................................... 6

ARGUMENT................................................................................................... 8

    III.  Plaintiffs Lack Standing to Seek Injunctive Relief............................... 9

    IV.  Plaintiffs Lack Standing to Assert a Claim as to the ISA Fund......................... 11

        A.   Plaintiffs Must Separately Establish Standing to Assert a Claim as to the ISA Fund. ................................................................ 12

        B.   Plaintiffs Cannot Establish Standing as to the ISA Fund. ......................... 15

CONCLUSION ............................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

Amy F. v. California Physicians' Serv.,
   2020 WL 2850282 (N.D. Cal. June 2, 2020)............................................................... 11

Barrett v. Pioneer Nat. Res. USA, Inc.,
   2018 WL 3209108 (D. Colo. June 29, 2018) ................................................. 12, 15, 18

Blum v. Yaretsky,
   457 U.S. 991 (1982) ................................................................................................... 14

Brown-Davis v. Walgreen Co.,
   No. 1:19-cv-05392-CRN, ECF No. 46 (E.D. Ill. March 16, 2020)............................. 16

Buscema v. Wal-Mart Stores E. LP, ,
   2020 WL 1889060 (D.N.M. Apr. 16, 2020)................................................................. 10

City of Los Angeles v. Lyons,
   461 U.S. 95 (1983) ....................................................................................................... 9

DaimlerChrysler Corp. v. Cuno,
   547 U.S. 332 (2006) ............................................................................................... 8, 14

Daugherty v. Univ. of Chicago,
   2017 WL 4227942 (N.D. Ill. Sept. 22, 2017) ............................................................. 17

Davis v. Anthony, Inc.,
   886 F.3d 674 (8th Cir. 2018) ...................................................................................... 14

Davis v. Fed. Election Comm'n,
   554 U.S. 724 (2008) ..................................................................................................... 8

Davis v. Washington Univ. in St. Louis,
   960 F.3d 478 (8th Cir. 2020) ...................................................................................... 14

Dezelan v. Voya Ret. Ins. & Annuity Co.,
   2017 WL 2909714 (D. Conn. July 6, 2017)................................................................ 17

Dorman v. Charles Schwab Corp.,
   2018 WL 6803738 (N.D. Cal. Sept. 20, 2018) .......................................................... 17

Dupree v. Prudential Ins. Co. of Am.,
   2007 WL 2263892 (S.D. Fla. Aug. 7, 2007) .............................................................. 12

Faustin v. City, Cty. of Denver, Colorado,
   268 F.3d 942 (10th Cir. 2001) ...................................................................................... 9

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,
   528 U.S. 167 (2000) ..................................................................................................... 9

Jordan v. Sosa,
   654 F.3d 1012 (10th Cir. 2011) .................................................................................... 9

Lewis v. Casey,
   518 U.S. 343 (1996) ........................................................................................ 8, 11, 18

Lewis v. Wendy's Int'l, Inc.,
  2009 WL 10672265 (C.D. Cal. Dec. 29, 2009) ........................................................ 10

Lujan v. Defs. of Wildlife,
  504 U.S. 555 (1992) ............................................................................................ 7, 8

Marks v. Trader Joe's Co.,
  2020 WL 2504333 (C.D. Cal. Apr. 24, 2020) ......................................................... 10

Marshall v. Northrop Grumman Corp.,
  2017 WL 2930839 (C.D. Cal. Jan. 30, 2017)......................................... 16, 17, 19, 20

Patterson v. Stanley,
  2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ........................................... 14, 16, 19, 20

PETA v. Rasmussen,
  298 F.3d 1198 (10th Cir. 2002) ........................................................................ 9, 10

Raines v. Byrd,
  521 U.S. 811 (1997)........................................................................................ 7, 8, 11

Spokeo, Inc. v. Robins,
  136 S. Ct. 1540 (2016) ....................................................................................passim

Summers v. Earth Island Inst.,
  555 U.S. 488 (2009) .............................................................................................. 7

Thole v. U. S. Bank N.A,
  140 S. Ct. 1615 (2020) .....................................................................................passim

Town of Chester, N.Y. v. Laroe Estates, Inc.,
  137 S. Ct. 1645 (2017) .......................................................................................... 8

Troudt v. Oracle Corp.,
  2019 WL 1006019 (D. Colo. Mar. 1, 2019) .............................................................. 17

Wilcox v. Georgetown Univ.,
  2019 WL 132281 (D.D.C. Jan. 8, 2019)................................................. 16, 17, 19, 20

Wyoming v. U.S. Dep't of Interior,
  674 F.3d 1220 (10th Cir. 2012) .............................................................................. 4

**Statutes**

29 U.S.C. § 1132(a)................................................................................................ 10

**Rules**

Federal Rule of Civil Procedure 12(b)(1)................................................................ 1, 6

Federal Rule of Civil Procedure 12(h)(3)................................................................... 6

**Regulations**

42 Fed. Reg. 18734 (Apr. 8, 1977) ........................................................................ 12

**Other Authorities**

U.S. Const. art. III, §§ 1–2 .................................................................................... 7

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Defendants BOKF, NA ("BOKF") and the Retirement Plan Committee of BOKF, NA ("Committee") jointly move this Court to dismiss Plaintiffs' claims in part.  Specifically, the Court should dismiss (1) Plaintiffs' claim for injunctive relief and (2) Plaintiffs' claim as to the International Strategic Allocation Fund (the "ISA Fund").

BOKF and the Committee file this motion in light of the June 1, 2020 opinion of the United States Supreme Court in which the Supreme Court confirmed that "[t]here is no ERISA exception to Article III."  Thole v. U.S. Bank N.A., 140 S. Ct. 1615, 1622 (2020) (holding that plan participants lacked constitutional standing because they had no concrete stake in the dispute).  In short, this Court lacks subject-matter jurisdiction over Plaintiffs' claims for injunctive relief and as to the ISA Fund because Plaintiffs lack constitutional standing to assert them.[1]

## INTRODUCTION

This putative class action is one of numerous copycat lawsuits filed in federal courts across the country alleging that companies breached their fiduciary duties under ERISA by offering supposedly imprudent investment options to their retirement-plan participants.  The proliferation of these lawsuits reflects the entrepreneurial ingenuity of a growing and opportunistic ERISA plaintiffs' bar.

---

[1] Pursuant to Rule 12(b)(6), Defendants previously moved to dismiss the Amended Complaint in its entirety for failure to state a claim.  [Doc. 30.] That motion remains pending before the Court.  Defendants now move to dismiss certain claims for lack of standing pursuant to Rule 12(b)(1).  The jurisdictional deficiencies identified in this motion are independent of the merits deficiencies identified in the pending Rule 12(b)(6) motion.  By challenging Plaintiffs' standing to assert certain claims, Defendants in no way concede the merits of any of Plaintiffs' claims.

Here, the named Plaintiffs are three former employees who previously participated in the BOK Financial 401(k) Plan (the "Plan").  Plaintiffs assert that Defendants breached their fiduciary duties by retaining certain proprietary funds—including the ISA Fund—on the menu of investment options available to Plan participants.  Based on the alleged breaches of fiduciary duties, Plaintiffs seek multiple forms of relief, including injunctive relief.

In this attorney-driven action, Plaintiffs' attorneys stretch the constitutional standing of the three named Plaintiffs beyond its breaking point.  The named Plaintiffs lack constitutional standing to pursue injunctive relief because their participation in the Plan ended before they commenced this lawsuit, so they have no concrete, personal stake in the injunctive relief sought.  Likewise, the named Plaintiffs lack constitutional standing to assert a claim as to the ISA Fund because their individual accounts were never invested in the ISA Fund, so they have no concrete, personal stake in a claim concerning that fund. Under well-established principles articulated by the Supreme Court, Plaintiffs cannot meet their burden of demonstrating constitutional standing with respect to those claims.  And the Supreme Court's recent decision in Thole makes clear that Plaintiffs cannot use ERISA's statutory scheme to evade the constitutional standing requirement.  140 S. Ct. at 1622.

Importantly, this motion does not challenge the named Plaintiffs' standing to bring claims regarding funds in which their accounts were actually invested.  Nor does this motion challenge the named Plaintiffs' standing to seek forms of relief other than injunctive relief.  Instead, this motion merely seeks to narrow the scope of this lawsuit to those claims that the named Plaintiffs have standing to assert.

Moreover, granting this motion will not preclude sufficiently interested parties—such as Plan participants who actually selected the ISA Fund for their individual accounts—from asserting claims related to the ISA Fund.  Nor will granting this motion preclude sufficiently interested parties—such as current Plan participants—from seeking injunctive relief.  Granting this motion might reduce the amount of fees that Plaintiffs' attorneys hope to obtain from this litigation, but "an interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim."  Thole, 140 S. Ct. at 1619 (internal quotation marks omitted).

Plaintiffs' attorneys cannot bring a claim based on Defendants' decision to retain the ISA Fund as an investment option in the Plan without first finding at least one Plan participant who actually invested in the ISA Fund and was injured as a result, and who wishes to assert a claim against Defendants.  Until then, there is no valid "Case" or "Controversy" as to the ISA Fund.  Similar logic applies to the claim for injunctive relief. In cases like this, Article III's case-or-controversy requirement serves to reign in excessive litigation brought by plaintiffs' lawyers manufacturing controversies for their own benefit.

## BACKGROUND

### I.      The Plan

The Plan covers eligible employees of BOKF and certain subsidiaries and affiliates.  [Am. Compl. ¶ 18.][2]  It is a "defined contribution plan" under 29 U.S.C. § 1002(34).  [Id. ¶ 17.] As such, participants' benefits are limited to the value of their own

---

[2] For purposes of this motion only, Defendants take the facts cited herein from the Amended Complaint as true, except where stated otherwise.

investment accounts, which is determined by the market performance of employee and employer contributions, less expenses.  [Id. ¶ 4.]

Within their individual accounts, participants can direct their own investments.  See Base Plan Document,[3] §§ 9.02, 9.03, available at [Doc. 30-1 at 62–63];[4] Plan Adoption Agreement, § H(2), available at [Doc. 30-2 at 37]; Fee Disclosures (explaining that the Plan complies with ERISA § 404(c)), available at [Doc. 30-3 at 2].  Participants may invest in any of the options on the Plan's menu.  [Am. Compl. ¶ 29.]  As an additional investment alternative, participants can elect a self-directed brokerage window option, which allows them to independently choose from a broad range of publicly traded securities.  See Plan Adoption Agreement, § H(2)(c), available at [Doc. 30-2 at 37]; Fee Disclosures, available at [Doc. 30-3 at 2].

The Plan's menu includes a capital preservation option, a target-date option, BOK Financial Corp. stock, and up to fifteen additional options.  [Am. Compl. ¶ 20.]  See generally Fee Disclosures (listing available options annually), available at [Doc. 30-3].  Only three of those options are managed by BOKF or its affiliates: the capital preservation option, the target-date option, and the ISA Fund.  Those are the three options challenged by the Amended Complaint.  See [Am. Compl. ¶¶ 45–74 (challenging target-date option),

---

[3] Courts have "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."  Wyoming v. U.S. Dep't of Interior, 674 F.3d 1220, 1231 (10th Cir. 2012).

[4] Citations to docket filings refer to the page numbers stamped upon CM/ECF filing.  Due to their voluminous nature, this motion cross-references certain exhibits submitted with Defendants' Rule 12(b)(6) motion.

¶¶ 75–81 (challenging capital preservation option), ¶¶ 82–84 (challenging ISA Fund)].[5] All of the other investment options on the Plan's menu (besides the three challenged options) are managed by third parties.  See [Doc. 30-3].

More specifically, as a capital preservation option, the Plan offered the Cavanal Hill Government Securities Money Market Fund (formerly known as the Cash Management Fund) (the "Money Market Fund").  [Am. Compl. ¶¶ 24, 76.]  Money market funds invest only in short-term debt securities, with the goal of minimizing liquidity risk and maintaining a stable asset value.  [Id. ¶ 39.]

As a target-date option, the Plan offered the Managed Allocation Portfolio Target Funds (the "MAP Funds"), which comprise seven different managed funds, specifically: (1) the MAP 2010 Fund, (2) the MAP 2020 Fund, (3) the MAP 2030 Fund, (4) the MAP 2040 Fund, (5) the MAP 2050 Fund, (6) the MAP 2060 Fund, and (7) the MAP Conservative Income Fund.  See [Doc. 30-3 at 7].  Target-date funds provide exposure to a variety of asset classes with an investment mix that changes to become more conservative as the fund's target date approaches.  [Am. Compl. ¶ 34.]

Finally, the Plan offered the ISA Fund as an international equity option that covered international stock markets broadly.  [Am. Compl. ¶ 82.]

## II.    The Named Plaintiffs

The three Named Plaintiffs—Ivan Herrera, Jeremy McMillan, and Suzanne West— are former BOKF employees.  See Etheredge Decl.[6] at ¶ 2.   Mr. Herrera's brief

---

[5]  As illustrated by the paragraph allocation in the Amended Complaint, Plaintiffs treat the ISA Fund like an afterthought and devote most of their attention to the target-date funds.

[6]  Citations to "Etheredge Decl." refer to the Declaration of Ken Etheredge, dated July 10, 2020, submitted herewith.

employment ended in December 2015; Mr. McMillan's brief employment ended in November 2018; and Ms. West's employment ended in July 2016.  Id.  None of the named Plaintiffs currently participate in the Plan.  Id. at ¶ 3.  Mr. Herrera and Ms. West's participation in the Plan ceased in 2016, and Mr. McMillan's participation in the Plan ceased in 2019.[7]  Id.

Throughout the duration of its existence, Mr. Herrera's Plan account was invested in only one fund: the MAP Target 2060 Fund.  Id. at ¶ 4.  Similarly, throughout the duration of its existence, Mr. McMillan's Plan account was invested in only one fund: the MAP Target 2040 Fund.  Id.  During its existence, Ms. West's Plan account was invested in two funds: the MAP Target 2030 Fund and the Money Market Fund.  Id.  None of the Plan accounts of the named Plaintiffs were ever invested in the ISA Fund.[8]  Id.

## LEGAL STANDARD

Rule 12(b)(1) allows a defendant to assert lack of subject-matter jurisdiction as a defense to a claim by moving to dismiss before serving a responsive pleading.  FED. R. CIV. P. 12(b)(1).  If the court determines "at any time" that it lacks subject-matter jurisdiction over a claim, then it must dismiss the claim.  FED. R. CIV. P. 12(h)(3).

---

[7]  The Amended Complaint nowhere alleges that the named Plaintiffs are current Plan participants.  Indeed, the Amended Complaint alleges that each Plaintiff's individual account "was distributed."  [Am. Compl. ¶¶ 14–16.]

[8]  The Amended Complaint is notably silent as to whether any of the named Plaintiffs ever owned the ISA Fund.  Or rather, the Amended Complaint is deliberately vague— alleging only that the account of each named Plaintiff "was invested in BOK's proprietary funds."  [Am. Compl. ¶¶ 14–16.]  The use of the plural "funds" in Paragraphs 15 and 16 of the Amended Complaint is false and misleading, as the accounts of Messrs. Herrera and McMillan were invested in only a single fund.

Article III of the Constitution specifies that the "judicial Power of the United States" extends only to "Cases" and "Controversies." U.S. Const. art. III, §§ 1–2.  There is no principle that is "more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (quoting Raines v. Byrd, 521 U.S. 811, 818 (1997)).

"The doctrine of standing is one of several doctrines that reflect this fundamental limitation."  Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009).  Constitutional standing is an "essential and unchanging part of the case-or-controversy requirement of Article III."  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).  The doctrine "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong."  Spokeo, 136 S. Ct. at 1547.  It developed "to ensure that federal courts do not exceed their authority as it has been traditionally understood."  Id.

Constitutional standing "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction."  Summers, 555 U.S. at 493 (internal quotation marks omitted).  In particular, to have constitutional standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo, 136 S. Ct. at 1547 (citing Lujan, 504 U.S. at 560).  The party invoking federal jurisdiction bears the burden of establishing these elements.  Id.  At the pleading stage, "the plaintiff must clearly allege facts demonstrating each element."  Id. (internal quotation marks and ellipsis omitted).

Importantly, a case or controversy as to one claim does not extend the judicial power to different claims or forms of relief.  The Supreme Court has repeatedly stated that "standing is not dispensed in gross."  Town of Chester, N.Y. v. Laroe Estates, Inc., 137 S. Ct. 1645, 1650 (2017) (quoting Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008) (quoting Lewis v. Casey, 518 U.S. 343, 358 n.6 (1996))); see also DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 353 (2006) (same). "To the contrary, 'a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'" Town of Chester, 137 S. Ct. at 1650 (quoting Davis, 554 U.S. at 734).  "At least one plaintiff must have standing to seek each form of relief requested in the complaint." Id. at 1651.

"To establish injury in fact, a plaintiff must show that he or she suffered an 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 136 S. Ct. at 1548 (quoting Lujan, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" Spokeo, 136 S. Ct. at 1548 (quoting Lujan, 504 U.S. at 560 n.1).  The Supreme Court has "consistently stressed that a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him." Raines, 521 U.S. at 819 (collecting cases).  A "concrete" injury must be "real," and not "abstract." Spokeo, 136 S. Ct. at 1548.  "Article III standing requires a concrete injury even in the context of a statutory violation." Thole, 140 S. Ct. at 1620–21 (quoting Spokeo, 136 S. Ct. at 1549).

## ARGUMENT

As the parties invoking federal jurisdiction, Plaintiffs bear the burden of establishing each essential element of constitutional standing with respect to each claim asserted.  As

set forth below, Plaintiffs cannot meet this burden with respect to their claim for injunctive relief and their claim concerning the ISA Fund.  Consequently, this Court lacks subject-matter jurisdiction over those claims, which do not satisfy the case-or-controversy requirement under Article III.

## III.    Plaintiffs Lack Standing to Seek Injunctive Relief.

Plaintiffs lack constitutional standing to seek injunctive relief because their participation in the Plan ended before they commenced this lawsuit.  All three of the named Plaintiffs are *former* employees and *former* participants in the Plan.

"[A] plaintiff must demonstrate standing separately for each form of relief sought." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000); see also City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983) (a plaintiff who has standing to seek damages must also demonstrate standing to pursue injunctive relief). "Although a plaintiff may present evidence of a past injury to establish standing for retrospective relief, he must demonstrate a continuing injury to establish standing for prospective relief." Jordan v. Sosa, 654 F.3d 1012, 1019 (10th Cir. 2011) (citing PETA v. Rasmussen, 298 F.3d 1198, 1202 (10th Cir. 2002)); see also Faustin v. City, Cty. of Denver, Colorado, 268 F.3d 942, 950 (10th Cir. 2001) (holding that plaintiff lacked standing to pursue injunctive relief).  In other words, to establish standing to pursue injunctive relief, a plaintiff must demonstrate a "real or immediate threat" of future injury. Lyons, 461 U.S. at 111.

Here, Plaintiffs lack constitutional standing to pursue injunctive relief because they are former employees who no longer participate in the Plan.[9]  See Marks v. Trader Joe's Co., 2020 WL 2504333, at *9 (C.D. Cal. Apr. 24, 2020) (holding that ERISA plaintiffs lacked standing to pursue injunctive relief because they were *former* plan participants); Lewis v. Wendy's Int'l, Inc., 2009 WL 10672265, at *7 n.45 (C.D. Cal. Dec. 29, 2009) ("[A]s a former employee, [the plaintiff] is not entitled to seek injunctive relief.").  As former participants, Plaintiffs cannot demonstrate that, absent injunctive relief, they "have a good chance of being likewise injured in the future."  PETA, 298 F.3d at 1203 (internal quotation marks omitted); see also Buscema v. Wal-Mart Stores E. LP, , 2020 WL 1889060, at *7 (D.N.M. Apr. 16, 2020) ("Under well-established law, the fact that Plaintiff is no longer at risk of being harmed by the conduct she seeks to enjoin deprives her of standing to seek prospective relief.").  Plaintiffs themselves have "no concrete stake" in the claim for injunctive relief, which "would not change" their individual positions at all.  Thole, 140 S. Ct. at 1622.  As such, Plaintiffs lack Article III standing to pursue injunctive relief.  See id.

Plaintiffs might argue that they are statutorily empowered to seek injunctive relief under 29 U.S.C. § 1132(a)(3).  But, as the Supreme Court recently emphasized, "[t]here

---

[9]  Notably, the Plan, like many other retirement plans, specifies an involuntary cash-out threshold of $5,000 for former employees.  *See* Plan Base Document § 7.03(a), available at [Doc. 30-1 at 48]; Adoption Agreement § 11, available at [Doc. 30-2 at 32].  Mr. Herrera's Plan account balance did not exceed $3,000; Mr. McMillan's account balance did not exceed $10,000; and Ms. West's account balance did not exceed $45,000 (and was generally much lower).  Consequently, given the small performance and fee differentials alleged by Plaintiffs and the six-year limitations period, none of the named Plaintiffs can show that they are likely to obtain a monetary recovery greater than $5,000 individually, even if they prevail in this action.  Thus, Plaintiffs cannot argue that they would use the monetary recovery from this action to resume their individual participation in the Plan.

is no ERISA exception to Article III." <u>Thole</u>, 140 S. Ct. at 1622.[10]  "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."  <u>Spokeo</u>, 136 S. Ct. at 1547–48 (quoting <u>Raines</u>, 521 U.S. at 820 n.3).  Thus, whether Section 1132(a)(3) affords participants a general cause of action to sue for injunctive relief "does not affect the Article III standing analysis." <u>Thole</u>, 140 S. Ct. at 1620.  ERISA "does not relieve [Plaintiffs] of the obligation to satisfy constitutional standing requirements."  <u>Amy F. v. California Physicians' Serv.</u>, 2020 WL 2850282, at *1 (N.D. Cal. June 2, 2020) (holding that plaintiff lacked standing to seek injunctive relief under ERISA).

Likewise, styling this lawsuit as a class action does not cure Plaintiffs' lack of constitutional standing to seek injunctive relief.  "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured . . . ."  <u>Spokeo</u>, 136 S. Ct. at 1547 n.6 (internal quotation marks omitted); <u>see also</u> <u>Lewis v. Casey</u>, 518 U.S. at 357 (observing that Article III standing requirements are "no less true with respect to class actions than with respect to other suits").

## IV.    Plaintiffs Lack Standing to Assert a Claim as to the ISA Fund

As discussed below, the named Plaintiffs lack constitutional standing to assert a claim as to the ISA Fund because their individual accounts were never invested in that fund.

---

[10] Although <u>Thole</u> involved a defined-benefit plan, the constitutional principles discussed therein have broader import.

### A.     Plaintiffs Must Separately Establish Standing to Assert a Claim as to the ISA Fund.

"A plaintiff must prove that *specific acts or omissions* were a breach of an ERISA fiduciary's statutory duties."  Barrett v. Pioneer Nat. Res. USA, Inc., 2018 WL 3209108, at *4 (D. Colo. June 29, 2018) (emphasis added) (explaining that "there is no cause of action for 'overall Plan mismanagement'").[11]  Perhaps anticipating a standing challenge, Plaintiffs' attorneys artfully drafted the Amended Complaint to make it *seem* like Plaintiffs are asserting one indivisible claim challenging a single practice.  But the Court should look to the Amended Complaint's *substance* over its form. Fundamentally, Plaintiffs are asserting multiple claims concerning distinct acts or omissions.[12]

The decision to retain the ISA Fund as an investment option on the Plan's menu is distinct from the decision to retain the MAP Funds and the decision to retain the Money

---

[11] Accordingly, Plaintiffs cannot simply challenge the *general practice* of including or retaining proprietary funds on the Plan's menu.  As discussed in the Rule 12(b)(6) briefing, affiliation does not give rise to an inference of fiduciary breach; Plaintiffs must show more.  [Doc. 35 at 10.]  See also 42 Fed. Reg. 18734 (Apr. 8, 1977) (recognizing that exemption of such transactions from § 406's prohibitions "is in the interests of plans and their participants and beneficiaries"); Dupree v. Prudential Ins. Co. of Am., 2007 WL 2263892, at *45 (S.D. Fla. Aug. 7, 2007) (the exemption on such transactions from § 406's automatic prohibitions "counsels strongly against imposing an automatic prohibition under § 404").

[12] Some of the language in the Amended Complaint implicitly acknowledges that Plaintiffs are alleging discrete fiduciary breaches.  See, e.g., Am. Compl. ¶ 75 ("In addition to the foregoing fiduciary breaches relating to the Plan's target-date funds, there also were fiduciary breaches relating to the Plan's capital preservation option. Specifically, the Committee failed to investigate alternatives to the Plan's money market fund . . . ." (emphasis added)).

Market Fund as investment options on the Plan's menu.[13]  The details matter here.  As is evident from the allegations in the Amended Complaint, the MAP Funds, the Money Market Fund, and the ISA Fund are different investment products with (1) different objectives, (2) different underlying investments, (3) different benchmarks, (4) different performance histories, (5) different fees, and (6) different competing alternatives. Moreover, assuming *arguendo* that Plaintiffs could establish fiduciary breaches (which Plaintiffs cannot), the alleged injuries would differ for each fund.

The Amended Complaint seeks adjudication of multiple questions, including (1) whether Defendants breached their fiduciary duties by retaining the MAP Funds as an investment option in the Plan, (2) whether Defendants breached their fiduciary duties by retaining the Money Market Fund as an investment option in the Plan, and (3) whether Defendants breached their fiduciary duties by retaining the ISA Fund as an investment option in the Plan.[14]  Although arguably similar and related, these three questions are separable and, in theory, susceptible to divergent answers, which will depend on the fact-specific circumstances surrounding the selection of each discrete fund.[15]  Cf. Patterson

---

[13] Regarding Defendants' decision-making process, the Amended Complaint alleges no facts supporting Plaintiffs' standing to assert a claim as to the ISA Fund.  To the contrary, Plaintiffs allege that they "do not have actual knowledge of the specifics of Defendants' decision-making process with respect to the Plan or the Plan's investments." [Am. Compl. ¶ 85.]

[14] Notably, this is not a case where Defendants offered only proprietary investment options to Plan participants.  Plaintiffs do not allege a practice of fiduciary mismanagement that affected all of participants' investment choices collectively. Rather, Plaintiffs challenge only three out of some seventeen or eighteen available options.  Moreover, the Amended Complaint itself individuates the challenges to those three options.

[15] In actuality, the answer to all three questions is the same: Defendants did not breach their fiduciary duties.

v. Stanley, 2019 WL 4934834, at *6 (S.D.N.Y. Oct. 7, 2019) ("Viewed at a high level, Plaintiffs' challenges to the Selected Funds and Non-Selected Funds raise similar *questions* . . . . But the evidence that Plaintiffs will have to put forward to establish liability will vary from fund to fund . . . ."); Davis v. Washington Univ. in St. Louis, 960 F.3d 478, 484 (8th Cir. 2020) (rejecting fiduciary breach claims as to "three specific investment options" and considering facts, circumstances, and comparator funds for each option separately).

"[A] plaintiff must demonstrate standing for each claim he seeks to press." DaimlerChrysler, 547 U.S. at 335. In DaimlerChrysler, the Supreme Court expressly rejected the theory of "commutative" or "ancillary" standing, which would allow "standing as to one claim to suffice for all claims arising from the same 'nucleus of operative fact.'" 547 U.S. at 352—53. The Court explained that such a theory "would quickly erode" the separation of powers that Article III is designed to maintain. Id. It is therefore insufficient, under DaimlerChrysler, for Plaintiffs to allege that the claim regarding the ISA Fund arises from the same "nucleus of operative fact" as the claims regarding the MAP Funds and the Money Market Fund.

Similarly, the Supreme Court has explained that "a plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject." Blum v. Yaretsky, 457 U.S. 991, 999 (1982); cf. Davis v. Anthony, Inc., 886 F.3d 674, 678 (8th Cir. 2018) (holding that wheelchair user could not use ADA violation encountered in the parking lot "to expand her standing to sue for unencountered violations inside the steakhouse that never injured her"). It is therefore also insufficient, under Blum,

for Plaintiffs to allege that the ISA Fund claim challenges conduct that is *similar* to the conduct that injured the named Plaintiffs personally.

Instead, Plaintiffs must separately demonstrate that they have standing to bring a claim regarding the ISA Fund.  See Barrett, 2018 WL 3209108, at *4 (rejecting "the proposition that any breach of an ERISA-imposed duty gives injured plan participants standing to sue for that breach *and* any others they can think of, regardless of whether the other breaches injured the participants").  As set forth below, Plaintiffs cannot meet their burden.

### B.    Plaintiffs Cannot Establish Standing as to the ISA Fund.

The Amended Complaint challenges, among other alleged acts or omissions, Defendants' decision "to retain [the ISA Fund] as an investment option in the Plan."  [Am. Compl. ¶ 83.]  In opposing Defendants' Rule 12(b)(6) motion, Plaintiffs argued that "the ISA fund's poor performance did not justify its cost" relative to "the average international fund."  [Doc. 33 at 14.]  Plaintiffs further suggested that Defendants should have "investigated other international funds."  Id.

But the named Plaintiffs lack standing to assert a claim based on Defendants' decision to retain the ISA Fund or any comparison of the ISA Fund to other international funds because the named Plaintiffs did not personally suffer any concrete injury that is fairly traceable to that decision.  See Spokeo, 136 S. Ct. at 1547.

Plaintiffs do not—and cannot—allege that the value of their individual accounts was impaired by the allegedly poor performance or high fees of the ISA Fund.  In a defined-contribution plan, such as the Plan at issue here, "[t]he value of a Plan participant's individual retirement account is a function of his or her contributions and investment decisions; if a participant does not choose to invest in a particular offering,

any change in the value of that financial product has no impact on the participant's account."   Patterson, 2019 WL 4934834, at *4 (holding that ERISA plaintiffs lacked standing to bring claims related to funds in which they did not invest).   "Losses incurred by funds in which Plaintiffs did not invest cannot have impaired the value of Plaintiffs' individual accounts."   Id. at *5 ("Plaintiffs here never invested in the Non-Selected Funds and consequently suffered no losses as a result of the underperformance of those funds."); see also Marshall v. Northrop Grumman Corp., 2017 WL 2930839, at *8 (C.D. Cal. Jan. 30, 2017) ("[T]he alleged performance losses were sustained by only those who invested in the Emerging Markets Equity Fund."); Wilcox v. Georgetown Univ., 2019 WL 132281, at *8 (D.D.C. Jan. 8, 2019) ("[F]or either Plaintiff to have standing to sue about their defined contribution Plan, he must show fiduciary breaches that impair his individual account's value.").   Consequently, with respect to the ISA Fund, Plaintiffs lack standing because they cannot establish that they themselves suffered a concrete injury that is fairly traceable to the challenged conduct at issue.

Numerous other district courts addressing the same or similar issues in the ERISA context have reached similar conclusions.   See, e.g., Brown-Davis v. Walgreen Co.,[16] No. 1:19-cv-05392-CRN, ECF No. 46 (E.D. Ill. March 16, 2020) (holding that ERISA plaintiffs lacked standing "to sue regarding funds in which they did not personally invest"); Patterson, 2019 WL 4934834, at *4–5 (holding that ERISA plaintiffs lacked standing to sue as to non-selected funds); Troudt v. Oracle Corp., 2019 WL 1006019, at *12 (D. Colo

---

[16] Plaintiffs cited Brown-Davis in their response opposing Defendants' Rule 12(b)(6) motion.   [Doc. 33 at 23.]   Brown-Davis is distinguishable and incorrectly reasoned as to the Rule 12(b)(6) merits issues, but the decision is correctly reasoned as to the standing issues.

Mar. 1, 2019) (dismissing ERISA claim as to fund in which no named plaintiffs invested because they failed to "establish individual standing by asserting a direct injury"); Wilcox, 2019 WL 132281, at *9 ("Plaintiffs clearly cannot allege an individual violation of ERISA as to . . . an investment option neither Plaintiff selected."); Dorman v. Charles Schwab Corp., 2018 WL 6803738, at *4–5 (N.D. Cal. Sept. 20, 2018) (holding that ERISA plaintiff lacked standing to bring a claim attacking a self-directed brokerage system that "he himself did not use"); Daugherty v. Univ. of Chicago, 2017 WL 4227942, at *5–6 (N.D. Ill. Sept. 22, 2017) (holding that ERISA plaintiffs lacked standing to assert claims related to plan and loan program in which they did not participate); Dezelan v. Voya Ret. Ins. & Annuity Co., 2017 WL 2909714, at *6 (D. Conn. July 6, 2017) (holding that, because ERISA plaintiff "did not own any general account stable value funds," she lacked standing to bring causes of action "to the extent that they relate to those products"); Marshall, 2017 WL 2930839, at *8–9 (holding that ERISA plaintiffs lacked standing to assert claims related to investment options in which they did not invest).[17]

---

[17] Numerous decisions arising outside the ERISA context also support the proposition that Plaintiffs lack standing to bring claims as to products they did not purchase.  See, e.g., Orange Transportation Servs., Inc. v. Volvo Grp. N. Am., LLC, 2020 WL 225041, at *4 (W.D.N.Y. Jan. 15, 2020) (holding that plaintiff could not "rely on its standing to assert claims related to the six semi-trucks it purchased to establish standing with respect to the trucks it did not purchase"); Chin v. Gen. Mills, Inc., 2013 WL 2420455, at *3 (D. Minn. June 3, 2013) ("[C]ourts routinely dismiss claims in consumer class actions that attempt to seek relief relating to products that the named plaintiffs have not purchased."); In re Direxion Shares ETF Tr., 279 F.R.D. 221, 230 (S.D.N.Y. 2012) (holding that plaintiffs had standing to pursue only claims associated with particular funds they purchased, since they had not been personally injured by losses related to funds they never owned); Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 771 (1st Cir. 2011) (holding that investors lacked standing to assert claims involving sales of certificates in six trusts from which no named plaintiff made purchases); Stegall v. Ladner, 394 F. Supp. 2d 358, 362–63 (D. Mass. 2005) (holding that purchaser of single mutual fund lacked standing to bring Investment Company Act claims concerning other funds in which he did not invest).

Defendants recognize that a split in authority exists.  Some courts outside this circuit have allowed plaintiffs to bring claims concerning investment options in which they did not personally invest.[18]  But those cases all predate Thole and are inconsistent with its core holding: "There is no ERISA exception to Article III."  140 S. Ct. at 1622.  The named Plaintiffs lack Article III standing here because winning the ISA Fund claim would not change their recovery or inure to their personal benefit.  Cf. Thole, 140 S. Ct. at 1619 (holding that ERISA plaintiffs had "no concrete stake" and lacked Article III standing because, if they won, "they would still receive the exact same monthly benefits that they are already slated to receive"); Barrett, 2018 WL 3209108, at *3 (holding that ERISA plaintiff lacked standing to assert claim related to a money market fund in which he did not invest because "[n]o recovery on the Plan's behalf related to the Money Market Fund will ever inure to Plaintiff").  The named Plaintiffs are mere bystanders with respect to the ISA Fund.  They have no concrete, personal stake in the outcome of the ISA Fund claim. "To be sure, their attorneys have a stake . . . but an 'interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.'"  Thole, 140 S. Ct. at 1619 (quoting Lewis v. Casey, 494 U.S. at 480).

---

[18] Many of the conflicting decisions are rooted in language from Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 592 (8th Cir. 2009), and Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 423 (6th Cir. 1998).  Notably, Braden and Fallick are factually distinguishable and predate the Supreme Court's decisions in both Thole and Spokeo. Cf. Berry v. Wells Fargo & Co., 2017 WL 7411165, at *6 (D.S.C. July 31, 2017) (declining to follow Fallick and observing that "the case appears to run afoul of the standing requirements articulated by the Supreme Court"); Barrett, 2018 WL 3209108, at *3 (distinguishing Braden and associated cases).

Plaintiffs cannot cure their lack of constitutional standing with respect to the ISA Fund merely by styling this action as a derivative suit brought on behalf of the Plan under 29 U.S.C. § 1132(a)(2).[19]  That is precisely the argument rejected in Thole.  140 S. Ct. at 1620 ("[I]n arguing for standing, [plaintiffs] stress that ERISA affords . . . participants . . . a general cause of action to sue for restoration of plan losses and other equitable relief.  See ERISA §§ 502(a)(2), (3), 29 U.S.C. §§ 1132(a)(2), (3).  But the cause of action does not affect the Article III standing analysis.").  In Thole, the Supreme Court "rejected the argument that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'"  Id. (quoting Spokeo, 136 S.Ct. at 1543).

In other words, the "statutory authorization" provided by Section 1132(a)(2) "does not itself confer Article III standing; Plaintiffs must sufficiently allege they suffered an injury-in-fact."  Marshall, 2017 WL 2930839, at *8; see also Patterson, 2019 WL 4934834, at *5 ("The mere fact that Plaintiffs purport to bring this action in a derivative capacity does not absolve them of the need to establish a constitutional injury-in-fact on the basis of the poor performance of the Non-Selected Funds."); Wilcox, 2019 WL 132281, at *9 ("This statutory authority to sue . . . does not automatically satisfy constitutional standing for all claims in this case.").  "To hold otherwise would essentially exempt derivative suits from Article III's requirement that plaintiffs suffer an individual harm."  Patterson, 2019 WL 4934834, at *5.

---

[19] Likewise, styling this lawsuit as a class action does not cure the named Plaintiffs' lack of constitutional standing.  See Spokeo, 136 S. Ct. at 1547 n.6; Lewis v. Casey, 518 U.S. at 357.

The narrow issue here is whether the named Plaintiffs have constitutional standing to assert an ERISA claim for breach of fiduciary duty based on allegations of underperformance and high fees with respect to a fund that the named Plaintiffs never held in their individual accounts and that did not cause them any injury.  In the absence of Tenth Circuit precedent directly addressing this issue, this Court should apply the rule that best accords with the core principles set forth in the Supreme Court's standing jurisprudence.  Because the named Plaintiffs cannot establish that they personally suffered any concrete injury that is fairly traceable to Defendants' retention of the ISA Fund, Plaintiffs lack standing to assert a claim as to that fund.  Numerous decisions by other courts provide persuasive support for this result.  See, e.g., Patterson, 2019 WL 4934834, at *4–5; Troudt, 2019 WL 1006019, at *12; Wilcox, 2019 WL 132281, at *9; Dorman, 2018 WL 6803738, at *4–5; Marshall, 2017 WL 2930839, at *8–9.  And this result accords with public policy by curbing overzealous, fee-seeking litigation without depriving any sufficiently interested party of an opportunity to press his or her claim in federal court.

## CONCLUSION

Plaintiffs' attorneys overreached when drafting the Amended Complaint.  As set forth above, Plaintiffs have not met—and cannot meet—their burden of demonstrating that they have constitutional standing to bring (1) a claim for injunctive relief and (2) a claim concerning the ISA Fund.  Therefore, the Court should dismiss those claims for lack of subject-matter jurisdiction.

Dated:          July 10, 2020

RESPECTFULLY SUBMITTED,

s/ Frederic Dorwart
Frederic Dorwart, OBA No. 2436
Paul DeMuro, OBA No. 17605
Jared Burden, OBA No. 30026
David W. Leimbach, OBA No. 33310
FREDERIC DORWART, LAWYERS PLLC
Old City Hall Building
124 East Fourth Street
Tulsa, Oklahoma 74103
Tel: 918-583-9922
Fax: 918-584-2729
fdorwart@fdlaw.com
pdemuro@fdlaw.com
jburden@fdlaw.com
dleimbach@fdlaw.com

**Attorneys for Defendants BOKF, NA
and the Retirement Plan Committee of
BOKF, NA**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 10, 2020, I electronically transmitted the foregoing document to the to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Mark Hammons
Kai H. Richter
Paul J. Lukas
Brock J. Specht
Benjamin J. Bauer
Christopher Theophillus Smith

<u>s/ Frederic Dorwart</u>
Frederic Dorwart